UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LADONNA GILCHRIST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-17-51-CG |
| | ) | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Ladonna Gilchrist brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income ("SSI") under Title XVI of the Social Security Act, *id.* §§ 1381-1383f. The parties have consented to the jurisdiction of a United States Magistrate Judge. Upon review of the administrative record (Doc. No. 9, hereinafter "R. _"),[1] and the arguments and authorities submitted by the parties, the Court affirms the Commissioner's decision.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed her DIB and SSI applications on November 28, 2012, alleging disability beginning October 12, 2011. R. 11, 200-18, 247. Following denial of

---

[1] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

her applications initially and on reconsideration, a hearing was held before an Administrative Law Judge ("ALJ") on July 21, 2015. R. 31-53, 73-74, 105-06. The ALJ issued an unfavorable decision on October 29, 2015. R. 8-30.

As relevant here, the Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 12, 2011, Plaintiff's alleged disability onset date. R. 13. At step two, the ALJ determined that Plaintiff had the severe impairments of epilepsy and anxiety disorder. R. 13-18. The ALJ also determined that Plaintiff's gastroesophageal reflux disease was a medically determinable but nonsevere impairment. R. 18. At step three, the ALJ found that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 18-19.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of her medically determinable impairments. R. 19-23. The ALJ found that Plaintiff retained the RFC "to perform a full range of work at all exertional levels" but with certain nonexertional limitations:

> no more than occasional climbing of ramps/stairs; no climbing of ladders/ropes/scaffolds; needs to avoid exposure to hazards, moving mechanical parts, unprotected heights; no more than occasional handling, grasping, finger[ing], and feeling with the non-dominant left hand; and is limited to the performance of simple tasks and instructions.

R. 19-20. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 23.

2

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of her age, education, work experience, and RFC—could perform. R. 24-25. Relying upon the written interrogatory answers supplied by a vocational expert regarding the degree of erosion to the unskilled occupational base caused by Plaintiff's additional limitations, *see* R. 328-36, the ALJ concluded that Plaintiff could perform light, unskilled occupations such as sales attendant, children's attendant, and blood-donor-unit assistant, and that such occupations offer jobs that exist in significant numbers in the national economy. R. 24-25. Therefore, the ALJ determined that Plaintiff had not been disabled within the meaning of the Social Security Act during the relevant time period. R. 25.

Plaintiff's request for review by the Appeals Council was denied, and the unfavorable determination of the ALJ stands as the Commissioner's final decision. *See* R. 1-4; 20 C.F.R. §§ 404.981, 416.1481.

STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004)

(internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While a reviewing court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

In this action, Plaintiff contends that the ALJ improperly considered the opinion of examining physician Matthew Sleziak, DO, and that this error resulted in Plaintiff's visual limitations being erroneously omitted from the RFC. *See* Pl.'s Br. (Doc. No. 14) at 2-6. The Court examines each of these arguments in turn.

I. *The ALJ's Consideration of Dr. Sleziak's Opinion*

In August 2013, Dr. Sleziak, from C.E. Provider Services, LLC, performed a consultative examination upon Plaintiff. R. 465-70. Relevant here, Dr. Sleziak found that Plaintiff's "[v]isual acuity was 20/50 left eye and 20/50 right eye without corrective lenses without corrective lenses with intact visual fields by confrontation." R. 467.[2] Dr. Sleziak

---

[2] A person with 20/50 vision can see clearly from twenty feet away an object that a person with average vison can see clearly from fifty feet away. Celia Vemont, *What Does 20/20 Vision Mean?*, American Academy of Ophthalmology (Nov. 30, 2016), https://www.aao.org/eye-health/tips-prevention/what-does-20-20-vision-mean.

additionally stated: "There are some relevant visual limitations relating to decreased visual acuity bilaterally without corrective lenses as noted above." R. 470.[3]

In the written decision, the ALJ discussed Dr. Sleziak's examination findings in detail, including the physician's 20/50 distance-vision finding. R. 16-17. The ALJ stated, "As for the opinion evidence, great weight is given to examining consultative examiner, Mat[t]hew Sleziak, D.O., . . . as it is consistent with [the] record as a whole and supported with explanation." R. 23.

Plaintiff objects that here the ALJ "did not follow the rules for examining physicians." *See* Pl.'s Br. at 3-5, 6. But Plaintiff relies upon authorities prescribing certain rules for evaluating the opinions of *treating* sources—i.e., physicians and other acceptable medical sources who have or have had an ongoing treatment relationship with the claimant. *See id.* at 4-5 (citing *Watkins v. Barnhart*, 350 F.3d 1297 (10th Cir. 2003)); 20 C.F.R. §§ 404.1502, 416.902 (2013). "The opinion of an examining physician is generally entitled to less weight than that of a treating physician . . . ." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004); *see* 20 C.F.R. §§ 404.1502, 416.902 ("We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability.").

---

[3] On state-agency reconsideration, reviewing physician Carolina Bacani-Longa, MD, similarly noted Plaintiff's limited distance vision when uncorrected. R. 85, 100. Plaintiff does not raise any challenge to the ALJ's consideration of this opinion.

5

Because Dr. Sleziak was an examining physician, the ALJ was required to "evaluate," "consider," "address," and "weigh" his opinion. *See* 20 C.F.R. §§ 404.1527(c), 404.1527(e)(2)(ii), 416.927(c), 416.927(e)(2)(ii) (2013); SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The ALJ's written decision reflects that he did just that: the ALJ expressly considered the opinion's consistency "with the record as a whole," as well as the accompanying explanation provided by Dr. Sleziak. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); *see id.* §§ 404.1527(c)(3), 416.927(c)(3); *see* R. 23.

Finally, Plaintiff cites *Hamlin v. Barnhart* to argue that the ALJ erred because an ALJ "may not pick and choose which aspects of an uncontradicted medical opinion to believe." *Hamlin*, 365 F.3d 1208, 1219 (10th Cir. 2004). But Plaintiff has not shown that Dr. Sleziak's opinion was "uncontradicted." In November 2012, for example, an ophthalmology exam noted better visual acuity, with uncorrected distance vision of 20/40 -1 in the right eye and 20/30 +2 in the left eye. R. 344. And reviewing physician David C. Williams, MD, assessed Plaintiff to have no visual limitations. R. 60, 69.[4]

Plaintiff therefore has shown no inadequacy with the ALJ's discussion in this regard.

---

[4] Plaintiff also argues that the ALJ failed to comply with the directive of Social Security Ruling 96-8p that prescribes: "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7; *cf. Doyal*, 331 F.3d at 764 (indicating that an ALJ must give "specific, legitimate reasons" for rejecting an examining source's medical opinion). *See* Pl.'s Br. at 3. The Commissioner does not specifically address this argument, but, even assuming an actual "conflict" between Dr. Sleziak's vague mention of limitations and the RFC, any error by the ALJ resulting in a lack of far-distance visual limitations should be disregarded as harmless as explained in Part III below.

## II. The ALJ's RFC Determination

Plaintiff suggests that the RFC determination's lack of visual limitations renders the RFC unsupported by substantial evidence, because "even if considered nonsevere," Plaintiff's visual limitations must be "considered and discussed." Pl.'s Br. at 5-6. The ALJ did discuss Plaintiff's distance vision several times in the written decision, however, although he ultimately chose not to adopt any visual functional limitations in the RFC. *See* R. 16, 17, 21, 22. The Court will not reweigh the evidence or substitute its own judgment for that of the Commissioner. *See Bowman*, 511 F.3d at 1272.

Further, the ALJ's lack of any visual limitations is supported by more than a "mere scintilla" of evidence in the record. *Branum*, 385 F.3d at 1270. Contrary to Plaintiff's suggestion, "a diagnosis of a condition" such as 20/50 eyesight "does not establish disability": the relevant inquiry is whether the claimant's impairments and related symptoms cause functional restrictions or limitations that affect the claimant's capacity to do work-related activities. *Madrid v. Astrue*, 243 F. App'x 387, 392 (10th Cir. 2007); *see* SSR 96-8p, 1996 WL 374184, at *2. Plaintiff argues that "[a] visual limitation is critical to the performance of any work," but she provides no support for this broad contention or any examples of allegedly necessary visual limitations. Pl.'s Br. at 5. Relevant to this point, there is no indication—despite Plaintiff's substantial medical record—that Plaintiff ever sought treatment for her 20/50 uncorrected eyesight such as eyeglasses, contact lenses, or corrective surgery. As noted by the ALJ, Plaintiff "did not report the use of any assistive devices for . . . seeing." R. 20; *see* R. 270, 294. At the administrative hearing, Plaintiff testified that when she is looking at something, she "can see good." R. 48. When asked

7

whether any doctor had told her that "they can't make your eyesight better," Plaintiff answered, "No." R. 45. Plaintiff has not shown a lack of substantial evidence for this aspect of the RFC determination.

   III.   *Any Error Committed Was Harmless*

Moreover, as noted by the Commissioner, any error by the ALJ resulting in an improper lack of far-distance visual limitations was harmless and does not require reversal. *See* Def.'s Br. (Doc. No. 19) at 6-8.

At step five, the ALJ identified three occupations that Plaintiff could perform: sales attendant, children's attendant, and blood-donor-unit assistant. R. 24; *see* R. 332. The occupation of children's attendant requires frequent far visual acuity. *See Dictionary of Occupational Titles* (4th rev. ed. 1991) 349.677-018, 1991 WL 672889 (Children's Attendant). The occupations of sales attendant and blood-donor-unit assistant, however, do not require far visual acuity at all. *See id.* 299.677-010, 1991 WL 672643 (Sales Attendant) ("Far Acuity: Not Present – Activity or condition does not exist"); *id.* 245.367-014, 1991 WL 672272 (Blood-Donor-Unit Assistant) (same).

The vocational expert testified that these latter two occupations represent a total of 2685 jobs existing in Oklahoma and 246,800 jobs in the national economy. R. 332. Thus, these occupations support the ALJ's step-five conclusion even if the third occupation (children's attendant) is omitted from consideration. *See Evans v. Colvin*, 640 F. App'x 731, 736 (10th Cir. 2016) (recognizing that the Tenth Circuit has "held an ALJ's erroneous inclusion of some jobs to be harmless error where there remained a significant number of other jobs in the national economy"); *Shockley v. Colvin*, 564 F. App'x 935, 940 (10th Cir.

2014) (finding any possible error with regard to one occupation identified by the ALJ to be harmless where the remaining two occupations "combined for 17,000 jobs regionally and 215,000 jobs nationally"); *King v. Colvin*, No. CIV-15-50-D, 2016 WL 1171491, at *4 (W.D. Okla. Mar. 8, 2016) (R. & R.) (finding no prejudicial error when, after disregarding one occupation cited by ALJ, the remaining occupations offered a combined total of 2400 jobs in Oklahoma and 266,000 jobs in the national economy), *adopted*, 2016 WL 1179212 (W.D. Okla. Mar. 24, 2016).

As a result, any error by the ALJ in omitting the disputed visual limitations "would not have affected the outcome in this case." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1173 (10th Cir. 2012). Plaintiff therefore has not shown that reversal is warranted. *See id.* at 1162-63, 1165, 1173.

## CONCLUSION

The decision of the Commissioner is AFFIRMED. Judgment shall issue accordingly.

ENTERED this 16th day of March, 2018.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE